No. 32,611

Mentzer, Bush & Company, *Plaintiffs*, v. The School Book Commission of the State of Kansas et al., *Defendants.*

(49 P. 2d 969)

Opinion filed October 5, 1935.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery, M. F. Cosgrove, Balfour S. Jeffrey* and *Francis C. Clark,* all of Topeka, for the plaintiffs.

*Clarence V. Beck,* attorney general, and *Theo. F. Varner,* assistant attorney general, for the defendants.

The opinion of the court was delivered by

Burch, C. J.: Mentzer, Bush & Company, a corporation which publishes school textbooks, commenced an action of mandamus in this court to compel the state school book commission to perform a contract with plaintiff relating to publication and distribution of certain school textbooks. The commission answered, and the cause was submitted on plaintiff's motion for judgment on the pleadings. The court found a contract had been made which the commission subsequently undertook to repudiate. The commission had exercised all the discretion it possessed over the subject of adoption of the textbooks, and rested under clear legal duty to perform. The plaintiff had a special interest in performance by the commission, and was without plain and adequate remedy in the ordinary course of law; and this court was not authorized to exercise a discretion to refuse the relief prayed for. Therefore a writ of mandamus was

issued on July 6, 1935, commanding the commission to perform. What follows will be a statement of the basis for the court's action.

The commission has authority to provide for the printing and distribution by private publishers of such school textbooks as the commission may find it is impracticable for the commission itself to print and distribute. In November, 1934, the commission found that on July 1, 1935, previous adoption of certain textbooks would expire. On November 16, 1934, the commission directed its secretary to call for bids for new texts in those subjects. On November 21, 1934, the secretary addressed a letter to publishers, including plaintiff, calling for bids for certain high-school texts, and for samples of texts. On January 4, 1935, plaintiff submitted bids on certain texts. The bids were supplemented on January 7 by a provision necessary to comply with the law. Sample texts were submitted in time for the commission to consider them.

On April 29 and April 30, 1935, the commission, in session for the purpose, considered bids and texts, and the record of the meeting for April 30 shows the following:

"The commission voted by ballot on a textbook in business arithmetic, and Social-Business Arithmetic, Barnhart-Maxwell, and Social-Business Arithmetic, Half Year, Barnhart-Maxwell, published by Mentzer, Bush & Company, received a majority of the votes cast, and was adopted by the commission for use in the high schools of Kansas for a period of five years."

After adoption of texts was completed, the commission sent to all publishers whose texts were adopted, including plaintiff, and to all dealers in schoolbooks throughout the state, a printed list entitled:

"BOOKS ADOPTED FOR USE IN KANSAS SCHOOLS
BEGINNING SEPTEMBER, 1935."

The list was classified with respect to subjects, contained the names of thirty-nine texts which the commission had adopted, including those of plaintiff, and gave the names of authors and publishers.

On May 9, 1935, the secretary of the commission mailed to plaintiff a letter inclosing for execution in duplicate a form of contract. The letter reads:

"At their meeting last week the school book commission of Kansas adopted your Social-Business Arithmetic for use in high schools of Kansas. I am inclosing herewith contract made out in duplicate which we will be pleased to have you sign and return to us. One copy of the contract will be signed here and returned to you for your files."

Immediately after the contract was received plaintiff signed the duplicates and returned them to the commission.

Plaintiff proceeded to notify, at its own expense, some 654 high schools, and many teachers, of adoption of plaintiff's books. Many teachers asked for sample copies of the books, to enable them to prepare for the September terms of school. Plaintiff furnished the sample copies, and plaintiff purchased paper for the editions of its books, all at large expense.

The meeting of the commission on April 30 adjourned to meet on May 27. On that date it was moved, seconded, and carried:

"That all steps pertaining to the further effectuation, carrying out and consummation of contracts entered into by the school book commission for the adoption of books for the year 1935, and the succeeding five-year period be suspended pending further information and investigation from the educational departments of Kansas University, Kansas State Teachers' College of Emporia, and Kansas State College."

The commission then adjourned, to meet at the call of the chairman.

On June 8 the commission met, rescinded the resolution of May 27, and adopted the following:

"That the commission reconsider its action in the adoption of all textbooks made at the meeting of April 29 and 30, 1935, and that the commission substitute for those adoptions an extension of one year of the contracts made in 1930 on the following textbooks, said contracts so extended to be on the same editions as adopted in 1930." [Here follows a list of nineteen textbooks, including two arithmetics.]

The result was, the commission did not sign the duplicate writing which was to be returned to the plaintiff, and extension contracts to furnish books already in use were subsequently signed by the publishers of such books and by the commission.

The prayer of the petition for the writ of mandamus was that the commission be required not only to sign the writing tendered to and signed by plaintiff as evidence of the contract between plaintiff and the commission, but that the commission be required to cause plaintiff's textbooks to be used in the schools of the state for the period of five years.

The statement of facts in the brief of the textbook commission recites in minified manner what the commission's record showed—adoption of plaintiff's books for use in the high schools of Kansas for a period of five years—and continues as follows:

"The secretary forwarded to the plaintiff and other publishers a formal agreement for execution with a request that the agreement be executed by

the plaintiff and other companies and returned to the defendant commission for further consideration."

There is no warrant for the concluding portion of this statement, "for further consideration."

The answer of the commission alleges that after taking the action disclosed by the record of the meeting of April 30 the commission recessed, and the secretary, acting without specific authority, but according to custom, forwarded to the several printing companies, including the plaintiff, the form of contract already referred to, plaintiff's copies being inclosed with the letter dated May 9. The letter appears above, and speaks for itself. It discloses no request for signature and return of the instrument for further consideration, and the letter plainly indicates the customary routine character of the signing of contracts, after formal adoption of books.

The answer alleges that after the action taken on April 29-30 the commission recessed. Subsequently several members reflected on what had been done, and became disturbed about consequences. As a result, the action was taken which is shown by the minutes of the meeting of May 27. This plainly indicates further consideration of adoption of plaintiff's books was an afterthought. No phase of adoption had in fact been held in abeyance for further consideration, and as indicated, the commission had broadcast fact of adoption of plaintiff's books.

The conduct of the parties indicates they contemplated a written memorial of adoption of plaintiff's books would be made, covering such details, largely statutory, as properly inhered in the nature of the transaction. These details were promptly made certain. The commission submitted to plaintiff for execution a form of contract which plaintiff promptly signed and returned.

No agreement of parties that there should be no contract until a writing was signed, was pleaded. The negotiations were all in writing, and no understanding of parties that plaintiff's books were not finally adopted unless and until the commission signed a writing, is derivable from the negotiations. The letter of May 9 was not that on return of instruments signed by plaintiff the commission would conclude the adoption of plaintiff's books by also signing. One copy would be signed and returned to plaintiff for its files—that is as a memorial. The commission said nothing about signing the copy retained for its files. There is no fact or circumstance tending to show the commission considered the subject of adoption of plaintiff's books remained pending as unfinished business, leaving legal

obligations to hang in the air. In the absence of express agreement there shall be no contract until a writing has been prepared and signed, the question is not what the commission had in mind, but what its objective manifestations were, and in this instance there is no room for a finding other than that the bargain was complete, although the commission did not sign. (Restatement, Contracts, § 26.) Plaintiff was justified in acting accordingly, and commenced to perform, at much expense. The answer pleads no notice to plaintiff of the action to be taken by the commission on May 27 and June 8, and what the commission attempted on June 8 was rescission of contract without plaintiff's knowledge or consent.

The commission is authorized by statute to make its own rules and regulations and to determine its own method of procedure, according to the law governing its creation. The answer is barren of any rule adopted by the commission relating to anything. The answer, however, alleges it was "a custom" and "implied rule" of the commission that adoption of a textbook was not made until a contract of adoption had been signed by the commission. The statute does not speak of customs, or rules by implication, and contemplates formal adoption of guides for conduct and action which may be known by third persons whenever their interests may be affected. Even new members ought to be able to know, on taking office, what the rules of procedure of the commission are.

By virtue of the statute the commission may attach reasonable conditions to the formation of contracts of adoption of textbooks; but the regulations, having the effect of laws governing the creation of legal relations, may not be secret laws. They must be accessible to publishers having dealings with the commission, so the publishers may not be trapped into sustaining large losses.

On April 30 the commission adjourned to meet May 27. It met on that day, and adjourned to meet on call of the chairman. It met again on June 8, when the motion to reconsider the action taken on May 29 and 30 was made. A bidder whose text had been adopted ought to know promptly whether an adoption is final, especially a formally promulgated adoption, and in the absence of special rule which plaintiff might learn about, plaintiff was entitled to depend on the generally accepted parliamentary practice which forms a part of our common knowledge, that a motion to reconsider can be made only on the day the vote to be reconsidered was taken, or on the next succeeding day, a legal holiday or a recess not being counted as a day. (Robert's Rules of Order, § 36.)

While the answer pleads the adjournment on April 30 was a recess, the record, which controls, does not show a recess. The motion to adjourn merely fixed the time when the commission would meet again. The answer says the meeting on May 27 was the next regular meeting. If it were a mere continuation of the session of April 30, May 27 was the last day on which a motion to reconsider action taken on April 30 could be made, and the making and adoption of the motion to reconsider on June 8 was wholly irregular, and was nugatory so far as it might affect plaintiff's rights.

The soundness of the general parliamentary rule is illustrated in this case. In November, 1934, the commission took up the subject of adoption of textbooks. Propositions came in from publishers. The answer shows that on January 18 and 19 textbooks were adopted. On the 8th, 9th and 29th of March textbooks were adopted. On April 29 and 30 textbooks were adopted. Plaintiff and textbook dealers were notified. Schools were notified. Teachers secured texts. Plaintiff took steps to have books ready for the opening of schools in September. In such a situation, because of nature of field of operation, the opportunity for abuse, and the confusion and uncertainty which would result, a formally adopted rule providing for other than prompt motion to reconsider would be unreasonable.

The commission's discretion over the subject of adoption of textbooks was exhausted when it contracted with plaintiff. While the duty to see that schools have textbooks is a public duty, plaintiff had a special private interest in performance of the contract. Nobody could tell how many books could be sold, and plaintiff had no plain and adequate remedy in the ordinary course of law.

The court has a certain discretion in the matter of causing writs of mandamus to be issued. In an appeal to the court's discretion the answer contains a castigation by the commission itself of its own conduct which is so sweeping and severe the court does not care to publish it in the Kansas Reports. There is no complaint of price of the plaintiff's books, but the expense to the public consequent on adoption of plaintiff's books, which was all that was involved in this proceeding, will be somewhat larger than if texts ten years old were used. The answer pleads that the new books are much more desirable, both as to form of text and subject matter. This being true, the public interest in keeping down expense is outweighed by the paramount public interest in seeing that organs of the state government keep within the law.

HARVEY and SMITH, JJ., dissenting.